[No. H000970. Sixth Dist. Sept. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ABEL RUDOLFO ESPARZA, Defendant and Appellant.

**COUNSEL**

James McNair Thompson and Dallas Sacher, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**PHILLIPS, J.**\*—Defendant was convicted in a court trial of vehicular manslaughter in violation of former Penal Code section 192, subdivision (3)(a) (count 2), two counts of driving under the influence and causing death or injury in violation of Vehicle Code section 23153, subdivision (a) (counts 3 & 4), and one count of driving with a suspended license in violation of Vehicle Code section 14601, subdivision (a) (count 5). The court also found true seven misdemeanor priors of driving under the influence.

Defendant was acquitted of murder (Pen. Code, § 187) and a charge of driving a vehicle without consent of the owner (Veh. Code § 10851) was dismissed.

Defendant was sentenced to the upper term of four years in state prison on count 3, driving under the influence and causing injury, and a subordinate consecutive eight-month prison term on count 2, vehicular manslaughter. The sentence on count 4 (driving under the influence) was stayed. Following a protracted hearing, defendant was granted 325 days presentence actual credit. The court also ordered the sentence be served consecutive to two unrelated misdemeanor terms.

On appeal, defendant asserts error in sentencing only. He claims he was denied appropriate presentence credits. He also maintains he was improperly sentenced consecutively on the vehicular manslaughter count. We find these contentions without merit, and affirm the judgment.

FACTS

John Anthony Patricca, Kevin Crook and Connie Crook were bicycling in Hellyer Park on the afternoon of June 6, 1983. They were riding single file on Hellyer Avenue with Kevin in the lead, Connie second, and John third, when John heard the sound of a car approaching. Defendant was driving the car. Just as Kevin cleared the bridge, defendant passed John, his car straddling the lane divider. Defendant hit Connie from behind, throwing her off the bike and face down on the roadside.

After defendant hit Connie, John testified defendant "punched the accelerator"; he heard the whine of an intake manifold as the car "barreled down." Defendant then hit Kevin who was about 20 feet ahead of Connie and had cleared the bridge. As he hit Kevin from behind, the front of the

---

*Under assignment by the Chairperson of the Judicial Council.

bike flew up and Kevin hit the top of the car just above the windshield with the back of his head.

With Kevin's body against the windshield, defendant continued forward in a straight line until he hit a large boulder. At this point Kevin flew off the hood, hitting a rock with his head, face first. Kevin died at the scene. The car began to roll and then hit a tree. Defendant never attempted to apply his brakes. Neither had he attempted to swerve around Connie or Kevin.

Around 1:30 p.m. Carmen Sanchez was driving west bound on Hellyer Avenue when she saw defendant approach the bridge from the opposite direction. With three cyclists on the bridge she realized there was not enough room for both cars. Ms. Sanchez then pulled off the side of the road. She saw defendant hit Connie and noticed as he passed her (just before he hit Kevin) that he did not apply the brakes. She also noticed defendant made no effort to swerve and miss either Connie or Kevin.

When California Highway Patrolman Ted Melden arrived at the scene he noticed defendant had a blank stare, stiff limbs, repetitive and slurred speech, vertical and horizontal nystgamus, and bloodshot eyes. Defendant was also verbally aggressive. From these symptoms the officer determined appellant was under the influence of PCP. Subsequent analysis of samples taken over two hours after the accident indicated defendant had 0.03 percent blood alcohol level and 0.05 parts per million PCP.

Defendant's alcohol and PCP usage was confirmed through the testimony of his earlier companion, Steve Talamantez.

Defendant was arrested on the instant offense on June 6, 1983. Ten days later on June 15, 1983, defendant was sentenced to one year in county jail for an unrelated offense of being under the influence of PCP, in violation of Health and Safety Code section 11550. Apparently, defendant had been convicted of this offense prior to, but was awaiting sentence at, the time of the instant offense.

On March 14, 1984, defendant was sentenced to two consecutive two-year terms for separate unrelated offenses: (driving under the influence and driving with suspended license); he completed those terms on August 6, 1984. Defendant remained in custody until he was sentenced on the instant offenses on June 27, 1985.

The court granted defendant presentence custody credit for 325 actual days. This included the period from defendant's arrest for the instant offense

until commencement of the first unrelated sentence, and the period from completion of the unrelated terms until defendant was sentenced on the instant offense. The trial court denied credit for the period defendant was actually serving sentences on the unrelated convictions. Defendant asserts he is entitled to presentence credit for the entire period of his custody from the date of his arrest on the instant offenses until he was sentenced on those offenses. We disagree. Defendant is entitled to credits under 2900.5 only for custody that is attributable to the present offenses.

Penal Code section 2900.5 reads in pertinent part: "[Credit for time in custody prior to commencement of sentence.] . . . (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

"Within the various potential contexts, this language has proved difficult to interpret and apply." (*People* v. *Mercurio* (1985) 169 Cal.App.3d 1108, 1110 [216 Cal.Rptr. 1].) We, therefore, take the time to analyze a substantial portion of the relevant authority.

The Supreme Court interpreted section 2900.5 in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789]. The defendant in that case was charged with murder while in prison on an unrelated offense, and was transferred to county jail awaiting trial. Upon being convicted and sentenced to a concurrent term, he claimed he was entitled to credit against the sentence for the homicide for the time he spent in jail. The issue was whether the defendant was entitled to such credit under Penal Code section 2900.5 when he was already serving a prison term and was receiving credit against the sentence for the other offense. (*Id.*, at p. 155.)

*Rojas* found the "crucial element of the statute is not where or under what conditions the defendant has been deprived of his liberty but rather whether the custody to which he has been subjected 'is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.'" (*Id.*, at p. 156.) The court concluded that since section 2900.5 applies to individuals charged with a crime and awaiting trial, the statute did not extend to those already serving a prison sentence on a prior offense. The "deprivation of liberty for which [the defendant] seeks credit cannot be attributed to the second offense;" thus "[S]ection 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*Id.*, at p. 156.)

■ The *Rojas* court concluded that the legislative purpose of section 2900.5 was to provide equal treatment for indigent defendants who could not post bail and were forced to serve a longer period of confinement than their wealthier counterparts. (*Id.*, at p. 156.) Thus, there is no reason to apply the statute in those situations where a defendant is already serving a term on an unrelated matter: "[t]he sensible inference is that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Id.*, at pp. 155-156.)

In *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910], the Supreme Court again had the occasion to interpret section 2900.5. There, the defendant was on parole when he committed a new offense. The defendant's parole was revoked because of the subsequent offense, and he was returned to custody for six months. He was later sentenced on the new offense but was denied credit for the parole violation term. On appeal the Court modified the judgment granting him credit for the time served on the · parole violation, finding that "the *conduct* which led to his arrest and conviction on the new criminal charge *also formed a basis for the parole hold and subsequent revocation proceedings.*" (Italics added.) (*Id.*, at p. 809.) The same criminal conduct was the cause of the restraint on both proceedings. The court observed in *In re Anderson* (1982) 136 Cal.App.3d 472, 475 [186 Cal.Rptr. 269] "the crucial test is not whether a defendant is serving a sentence during the time he seeks credit for the second offense. Instead *Rojas* requires that an inquiry be made into whether the second offense was the cause of the sentence being served."

The *Atiles* court set forth several hypothetical situations in which the legislative intent of equal treatment for indigents would be frustrated if credit was denied on multiple concurrent terms. One such situation was if the defendant faced charges in more than one jurisdiction. (*In re Atiles, supra,* 33 Cal.3d at p. 812.) This statement can be read broadly; however, this apparently sweeping language is limited to multiple concurrent terms which are based on the same criminal conduct. (*Id.*, at p. 809.) The court stated it "need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is a basis for those restraints." (*Id.*, at p. 810.)

This dictum from *Atiles* was adopted by the Fifth District Court of Appeal · in *People* v. *Schaaf* (1983) 150 Cal.App.3d 45 [197 Cal.Rptr. 458]. In that case, Schaaf was granted probation for misdemeanor manslaughter in November of 1980. In March of 1981 probation was revoked in his absence. On September 7, 1982, he was arrested for killing Adam Ballesteros. On September 10, 1982, he began serving a six-month term for violation of

the probation granted in the manslaughter case. On November 17, 1982, he began serving a nine-month sentence for an unrelated driving under the influence conviction. On February 7, 1983, he was sentenced to prison for the Ballesteros killing. The Court of Appeal held Schaaf was entitled to credit against his prison sentence for the entire five months he spent in custody, from September 7, 1982, to February 7, 1983.

The court cited a number of decisions interpreting section 2900.5, all of which relied on the causal relationship between the offense and custody. (*In re Bentley* (1974) 43 Cal.App.3d 988 [118 Cal.Rptr. 452]; *People v. Penner* (1980) 111 Cal.App.3d 168 [168 Cal.Rptr. 431]; *In re Anderson, supra,* 136 Cal.App.3d 472; and *In re Atiles, supra,* 33 Cal.3d at p. 475.)

Then, on the basis of these cases the *Schaaf* court announced the rule that a defendant is entitled to credit for the entire time he spends in jail awaiting sentence if the restraint on the unrelated crime does not precede the restraint caused by the pending case. (*People v. Schaaf, supra,* 150 Cal.App.3d at p. 52.)

By focusing on the sequential relationship between the beginning of restraint in a pending case and the beginning of restraint in unrelated cases, *Schaaf* lost sight of the determinative factor under section 2900.5, subdivision (b), despite the fact that all of the cases the court relied upon found a causal relationship between the present criminal conduct and the custody for which credit was granted. That relationship is one of attributability, not one of sequence.

The Ballesteros killing was not the basis for the six-month and nine-month terms of custody. The only reason for those terms was the underlying misdemeanor offenses.

It is understandable how the *Schaaf* court went awry. The court relied on broad language in *Atiles* but disregarded the limits placed on it by *Atiles* (that dual credit is allowed when both sentences arise out of the same criminal conduct.) That language is as follows: "In determining whether custody for which credit is sought under section 2900.5 is 'attributable to proceedings leading to the conviction,' the sentencing court is not required to eliminate all other possible bases for the defendant's presentence incarceration. The court need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and *the conduct related to the new charge is a basis for those restraints.*" (Italics added.) (*In re Atiles, supra,* 33 Cal.3d at pp. 810-811.) It is clear the language relied upon by the *Schaaf* court did not intend to suggest that the basis for the custody be disregarded.

The *Atiles* court did not purport to modify the *Rojas* holding and in fact relied on the reasoning in that case in coming to its conclusion. (*Id.*, at p. 808.) The *Atiles* majority agreed with *Rojas* that the "questionable reasoning" employed by the Fifth Appellate District in *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833] led to an erroneous ruling. Quoting *Rojas*, the majority stated: "This 'questionable reasoning,' we observed, had been applied in some subsequent cases 'to less favorable factual situations, thereby reaching results which do not appear to have been intended by the drafters of section 2900.5' and we disapproved that reasoning, as well as the holding in *In re Pollock* [*supra*] 80 Cal.App.3d 779, which had applied the *Bentley* reasoning to a quite disparate context." (Fn. omitted.) (*In re Atiles, supra,* 33 Cal.3d at pp. 808-809.)

The "disparate context" of *Pollock,* however, is almost identical to the circumstance of *Schaaf.* In *Pollock* the defendant was arrested on April 11, 1976, for the subject offense. While in jail awaiting trial, he was arrested on May 18, 1976, for a different crime and on June 4, 1976, he was sentenced to prison for that offense. He was sentenced for the subject offense on September 3, 1976. (*In re Pollock, supra,* 80 Cal.App.3d at p. 781.)

*Pollock* reasoned that despite the fact the defendant was serving a sentence on an unrelated crime during part of the presentence period of the subject offense, he was entitled to credit for all the time from his first arrest until his sentencing on the subject offense. (*In re Pollock, supra,* 80 Cal.App.3d at pp. 781, 783, 785.) However, the Supreme Court found "this holding is incorrect and to the extent that *Bentley* and *Pollock* are in conflict with interpretation set forth . . . they are expressly disapproved." (*In re Rojas, supra,* 23 Cal.3d at p. 157.)

The *Schaaf* court noted the *Pollock* holdings had been expressly disapproved but nonetheless failed to recognize the significance of this disapproval. Instead, the *Schaaf* court relied on a portion of the *Atiles* dicta and, taking it out of context, used the language to reaffirm the *Pollock* reasoning. It is not possible to distinguish the facts or reasoning of *Pollock* from those of *Schaaf.*

Under facts similar to *Schaaf* the Supreme Court approved the denial of credit by the court in *People* v. *Minjarez* (1980) 102 Cal.App.3d 309 [162 Cal.Rptr. 292]. In *Minjarez* the defendant was arrested on the subject offense on February 4, 1977; he remained in presentence custody until April 12, 1977, when he was sentenced on an unrelated probation violation. On December 19, 1977, he was sentenced to state prison on a second, again unrelated, conviction. Finally, on March 6, 1979, he was sentenced on the subject offense, to be served consecutive with the second unrelated con-

viction. The trial court gave the defendant credit for the time he was serving the unrelated terms. (*Id.*, at p. 313.) The Court of Appeal again looked to the cause of the custody and found the conduct for which the defendant was serving the unrelated prison terms was not the same as caused his initial arrest and confinement on the subject offense. The court noted: "Here, at the time defendant was in custody on the murder charges, he was simultaneously serving a period of incarceration for prior unrelated offenses. Based on the language of Penal Code section 2900.5, subdivision (b), as interpreted by the *Rojas* court, we conclude that defendant is entitled to pre-sentence credit only for that period of custody not attributable to his incarceration for previous unrelated offenses [i.e., from the day of his arrest in the homicide case to the date on which incarceration on the unrelated sentence commenced.]" (*Id.*, at p. 313.)

The Supreme Court approved of *Minjarez* because the sentence on the subject conviction was to be served consecutive to the second unrelated offense. (See Pen. Code 2900.5, subd. (b).) However, *Minjarez* was also denied credit for a probation violation term which was not served consecutive to the subject offense. (*People* v. *Minjarez, supra,* 102 Cal.App.3d at p. 312.) *Minjarez* did not rely on the consecutive sentence to deny credit; rather credit was denied because "at the time defendant was in custody on the murder charges, he was simultaneously serving a period of incarceration for prior unrelated offenses." (*Id.*, at p. 313.)

The First District Court of Appeal recently interpreted the *Rojas-Atiles* principles in *People* v. *Joyner* (1984) 161 Cal.App.3d 364 [207 Cal.Rptr. 636]. Joyner committed several crimes in California and then fled the state before he could be arrested. He turned up in Florida, where he was arrested and held in custody on unrelated Florida charges; he was thereafter placed on a California warrant hold. Joyner was sentenced to three years in the Florida State Prison on the Florida charges; he was thereafter returned to California. The defendant claimed he was entitled to credit for the period from the date of the hold until he was sentenced in California.

The *Joyner* court found under *Rojas* the defendant was not entitled to credit since the restraint was first imposed for the unrelated Florida crime. Merely because the defendant was later held also for the California offense did not entitle him to the credit since the California hold had no effect on his liberty. (*People* v. *Joyner, supra,* 161 Cal.App.3d at p. 368.) Thus the *Joyner* court found that since the defendant was already in custody on an unrelated offense, he was not entitled to credit for the time between the initial hold and his release from Florida custody. Quoting from *People* v. *Schaaf* (1983) 150 Cal.App.3d 45, 51-52 [197 Cal.Rptr. 458], the majority stated: "'We conclude from *Atiles* that except for the *Rojas* situation where

the defendant is already serving a sentence when restraints related to the instant sentencing are first imposed, that a defendant is entitled to presentence credit under section 2900.5 for all presentence jail time spent while awaiting sentence in the pending case. Such presentence jail time is deemed attributable to the pending offense even though restraints on other unrelated cases were also imposed on the defendant, *provided that the restraints on the unrelated cases did not precede the restraints caused by the pending case.'* (*People* v. *Schaaf, supra,* 150 Cal.App.3d at pp. 51-52, italics added.)" (*People* v. *Joyner, supra,* 161 Cal.App.3d at p. 368-369.)

While *Joyner* purported to accept the *Schaaf* analysis, it did not reject the causal relationship analysis required by *Rojas* and *Atiles.* (*People* v. *Joyner, supra,* at p. 368.)

The Fifth Appellate District again considered the issue of dual custody credit in *People* v. *Cornett* (1985) 165 Cal.App.3d 752 [212 Cal.Rptr. 24]. The *Cornett* court concluded that the defendant was entitled to presentence custody for the entire period between arrest and sentencing despite the fact that he had served a jail term in the interim. However, in *Cornett* the jail term originated from related criminal conduct.

Cornett was picked up by the victim while hitchhiking. He then became intoxicated. When the victim sexually assaulted him, Cornett stabbed the victim, in Tulare County, and drove off in the victim's automobile. Cornett was arrested in Madera County the same day for driving under the influence; a few days later a hold from Tulare County was placed on him, for manslaughter and robbery of the victim. (*People* v. *Cornett, supra,* at p. 765.) The crimes were related since they originated out of the same course of criminal conduct.

Two other districts have recently reaffirmed the principle that for the custody to be "attributable" to the subject conviction there must be a causal relationship. In *People* v. *Ross* (1985) 165 Cal.App.3d 368 [211 Cal.Rptr. 595], the Second District denied credit for time spent in custody on two misdemeanor convictions despite the fact the same criminal conduct was subsequently used to revoke probation. The *Ross* court reasoned the conduct for which the defendant was sentenced on the probation violation was the initial conviction for which probation was ordered. The court stated: "[n]either the original conviction nor the length of sentence thereon is in any way dependent upon the misdemeanor conduct." (*Id.,* at p. 372.) *Ross* was adopted by the Fourth District in *People* v. *Davis* (1985) 169 Cal.App.3d 614 [215 Cal.Rptr. 385], which denied credit under very similar circumstances. *Davis* concluded: "If we were to agree with him we would participate in the founding of a new type of bank—a 'credit bank' to be used by

criminals at appropriate times for deposits or withdrawals of credits against custodial time to be served for crimes not yet committed." (*Id.*, at p. 618.)

Defendant maintains *Rojas* is the exception and *Schaaf* the rule. However as shown by the cases above, *Schaaf* is the only opinion which completely disregards the underlying cause of the custody. Once a defendant begins to serve a prison or jail term on an unrelated offense, his custody is not "caused" by the pending charges. If he posts bail on the related offense he nonetheless remains in custody on the unrelated offense. The pending charges thus have no effect on his liberty.

 In the instant matter, defendant was serving terms on unrelated offenses from June 15, 1983, to August 7, 1984, the period for which he claims credit. Under these facts, his sentences were not "multiple concurrent terms" within the meaning of *Atiles* and *Cornett,* since they did not arise out of the same criminal conduct. Furthermore, as in *Rojas,* he was serving a term of incarceration (from June 15, 1983, until Aug. 7, 1984) while awaiting sentence in the instant case. Such custody was not "dead time" since he received credit against his sentence for the unrelated offense. Thus, the "pending proceeding had no effect whatever" upon his liberty. (*In re Rojas, supra,* 23 Cal.3d at p. 156.)

There is no logical reason to lawfully deny a defendant credit if he is already serving a term when the charges in question are filed, but justify the grant of credit if he is sentenced on an unrelated offense only a few days after being arrested on the instant offense. Such distinction is wholly arbitrary.

The rationale of *Rojas* is consistent with this result; nothing in the articulated logic of that case artificially limits the rule to periods of incarceration which began before the present restraint. In fact, such a rule would be highly illogical. The possibility would arise that credit would depend upon the happenstance of whether the unrelated sentence began one day before, as opposed to one day after the subsequent arrest.

Since defendant's custody was not attributable to the instant offense, but was based solely on the unrelated sentences, he is not entitled to the credit he seeks. To grant dual credits in this situation would create the "credit bank" that was of concern in *Ross, supra,* 165 Cal.App.3d 368. A convicted defendant awaiting sentence out of custody would have nothing to lose by committing further crimes. Our courts would be powerless to punish him for the subsequent offenses.

In addition, section 2900.5 specifically prohibits granting dual credit when consecutive terms are ordered. Here the trial court ordered the current terms be served consecutively to the unrelated terms. The offenses for which appellant served terms prior to being sentenced on the present case are completely unrelated to the current convictions. They involved separate criminal acts committed at different times and places. (Cal. Rules of Court, rule 425(a)(3).)

■ Defendant also contends the trial court erred in ordering count II and count III be served consecutively. He argues under Penal Code section 654 one cannot be sentenced on both driving under the influence and causing injury and vehicular manslaughter merely because there are multiple victims.

Defendant relies on *Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345 [211 Cal.Rptr. 742, 696 P.2d 134]. In *Wilkoff*, the Supreme Court held a defendant cannot be convicted of multiple counts of violation of driving under the influence and causing injury when there is only one instance of driving, despite the fact there are multiple victims. However, *Wilkoff* let stand separate counts of vehicular manslaughter and driving under the influence and causing injury. The court noted: "The actus reus of vehicular manslaughter is homicide—the unlawful killing of a human being. When a defendant commits several homicides in the course of a single driving incident, he or she has committed the act prohibited by the statute several times. Thus, the Courts of Appeal have consistently upheld multiple counts of vehicular manslaughter, while prohibiting multiple counts of felony drunk driving. '[I]t is settled that under the manslaughter statutes, each victim represents a separate violation (*People* v. *De Casaus* (1957) 150 Cal.App.2d 274, 280 . . . .'" (*Id.,* at pp. 349-351, fn. omitted; see also *People* v. *Eagles* (1982) 133 Cal.App.3d 330, 343.)

The court found multiple counts of violating a statute are appropriate only when the gravamen of the offense has been committed more than once. The gravamen of section 23153 is driving; the gravamen of vehicular manslaughter is homicide. (*Wilkoff* v. *Superior Court, supra,* 38 Cal.3d at pp. 349, 352.)

Although *Wilkoff* held a single act of drunk driving cannot lead to multiple convictions merely because there is more than one victim, multiple convictions are permissible if there are several acts of driving. The court stated: "By 'one instance' of drunk driving we refer to one volitional act of driving. Thus if a driver collides with one car and is involuntarily propelled into a second car, only 'one instance' of driving has occurred. But if a driver collides with the first car and then *voluntarily* drives further and collides

with second car, then two acts of driving have occurred and the driver may be charged with two counts of felony drunk driving." (*Id.*, 38 Cal.3d at p. 349.)

Here defendant was sentenced on one count of driving under the influence and causing injury as to Connie Crook and a consecutive term of vehicular manslaughter as to Kevin Crook. Furthermore the court found there were two separate acts of driving. After defendant hit Connie he voluntarily continued to drive and then hit Kevin. The judge noted there was evidence that defendant "punched it"—accelerating—after hitting Connie. While this testimony was somewhat disputed, there was no question defendant never attempted to apply his brakes even after hitting Kevin. Connie and Kevin were separated by 20 feet and were on separate "vehicles." There is substantial evidence supporting the court's finding defendant voluntarily drove further after hitting Connie and proceeded to hit and kill Kevin Crook.

Defendant cites *People* v. *Jones* (1985) 164 Cal.App.3d 1173 [211 Cal.Rptr. 167] and *People* v. *Milham* (1984) 159 Cal.App.3d 487 [205 Cal.Rptr. 688] for the proposition that even if one can be convicted of both section 23153 of the Vehicle Code and former Penal Code section 192, subdivision (3)(a), he cannot be sentenced on both. (Cf. *People* v. *Eagles* (1982) 133 Cal.App.3d 330, 343 [183 Cal.Rptr. 784].) However in *Jones* and *Milham* there was only one collision and thus one act of driving. Here there were two collisions – one resulting in injury, the other in death.

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 1986. Bird, C J., Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.