[Crim. No. 6845. Fifth Dist. June 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMAN LEE VELEY, Defendant and Appellant.

## COUNSEL

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, Mark Cutler, Chief Assistant State Public Defender, and Augustus E. Noland, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally and Thomas R. Yanger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOOLPERT, Acting P. J.**—In October 1980 defendant in this principal action pled guilty to possession of phencyclidine (PCP) for sale. He was

placed on three years felony probation, one condition of which was six months local incarceration. Against this term, defendant received certain presentence credits. In June 1982 he was arrested twice for being under the influence of PCP. He was sentenced to jail for a total of 120 days on these new misdemeanors. In November 1982 he completed service of the jail sentences. One month later the trial court revoked appellant's probation in the principal action after taking judicial notice of his two misdemeanor convictions. A "Declaration Letter (Violation of Probation)" dated November 30, 1982, asked the trial court to revoke probation for these new offenses. He was sentenced to prison for the four-year middle base term.

The abstract of judgment reflects 198 days of presentence credits for the actual time served as a condition of probation (Pen. Code, § 2900.5, subd. (a)) plus conduct credits for this period (Pen. Code, § 4019, subd. (a)(2)). ▪ Defendant now contends he should receive credit for the time spent in county jail on the two misdemeanor charges which later became the basis for the probation revocation. We will assume he received no credit for this jail time, although the record is unclear exactly how the 198 days were determined.

The credits are opposed on two bases. First, the record does not show the actual time spent in jail on the two misdemeanor charges. Second, in any event, the jail time was not attributable to the instant case within the meaning of Penal Code section 2900.5. It is true that the record does not reveal defendant's actual time in custody on the misdemeanor charges. However, for reasons to be stated, we will conclude defendant is entitled to the additional credits and remand for a redetermination of credits.

Defendant's probation was not revoked until *after* he finished serving his misdemeanor sentences. There is no indication that a probation violation hold was ever placed on him while he was in custody on the misdemeanor charges. We contrast this to the more typical situation where a defendant seeks credit against a term imposed on conviction of *new* charges, which also leads to probation revocation in an earlier matter. Instead, defendant seeks credit in the *earlier* proceeding for jail time relating to the subsequent conduct which caused the probation revocation on the old charges.

Several aspects of defendant's status are to be noted: (1) his entire sentence was served on the new charges before probation was revoked on the earlier conviction and (2) he seeks credit for both presentence and postsentence custody. In light of *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910], these are distinctions without a difference. In *Atiles,* petitioner was on parole when arrested on new charges, which led to a parole hold and revocation. The Supreme Court held petitioner was entitled

to credit on the new charge for his presentence custody even though his parole had been revoked. The court stated: "In determining whether custody for which credit is sought under section 2900.5 is 'attributable to proceedings leading to the conviction,' the sentencing court is not required to eliminate all other possible bases for the defendant's presentence incarceration. The court need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is a basis for those restraints. Nothing in the language of section 2900.5 suggests that the Legislature intended to permit a sentencing court or this court to speculate, as suggested by respondent, that a defendant whose parole has been revoked while he awaits trial on new charges would have been ordered confined by the board on the basis of charges other than those leading to conviction. Indeed, in many cases the new criminal charges may be disposed of before the parole revocation proceedings have concluded and the sentencing court cannot know whether revocation is ordered or any custody time is imposed.

"We are satisfied that the Legislature intended that 'custody . . . attributable to proceedings related to the same conduct for which the defendant has been convicted' include time in presentence custody during which a restraint or restraints related to that conduct made it impossible for the defendant to obtain his freedom, regardless of whether the defendant was also subject to other restraints on his liberty. Our conclusion is based on the literal language of subdivision (b) of section 2900.5, pursuant to the well-established principle of statutory interpretation that if no ambiguity, uncertainty, or doubt about the meaning of a statute appears, the provision is to be applied according to its terms without further judicial construction." (*Id.*, at pp. 810-811, fn. omitted.)

Though here defendant seeks credit for the time spent as a result of misconduct during a grant of probation, the *Atiles* reasoning applies. The new charges caused the revocation of probation on the original charge and were thus "reasonably related" to the prison term on which credit is sought. Defendant was not already serving a term for an unrelated offense which never became associated with the principal term against which credits are claimed.

Our conclusion is required by this language in *Atiles*: "Moreover, even if we were to perceive ambiguity in subdivision (b), our construction of this provision would be required by familiar rules which call for construction to effectuate the legislative purpose (*Morse* v. *Municipal Court, supra,* 13 Cal.3d 149, 156 [118 Cal.Rptr. 14, 529 P.2d 46]) and, in the case of penal statutes, for the resolution of ambiguity in favor of the criminal defendant

(*People* v. *King* (1978) 22 Cal.3d 12, 23 [148 Cal.Rptr. 409, 582 P.2d 1000]).

"Our construction of section 2900.5 is compatible with the dual legislative purpose of 'eliminat[ing] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts' (*In re Rojas, supra,* 23 Cal.3d [152] at p. 156 [151 Cal.Rptr. 649, 588 P.2d 789]) and equalizing the actual time served in custody for given offenses. (*People* v. *Riolo* (1983) 33 Cal.3d 223, 228 [188 Cal.Rptr. 371, 655 P.2d 723].)

"Unequal treatment follows not only from denial of credit altogether for presentence jail time, however, but also from denial of credit on multiple concurrent terms. This may occur if a defendant seeks separate trials on severable charges to ensure his right to a fair trial, if a prosecutor does not join multiple counts in a single accusatory pleading, or if a defendant faces charges in more than one jurisdiction. It may also occur in cases such as this in which parole revocation proceedings and new charges are pending simultaneously if the defendant does not promptly plead guilty and seek immediate sentencing. In each of these situations, the possibility of unequal treatment exists if concurrent terms are imposed, but because sentence has been imposed or parole revoked in the first proceeding before the others are tried, credit for time in jail while awaiting disposition of the remaining charges is denied. The terms then are not truly concurrent since the effect of denying credit on the later terms is that they commence only on the date sentence is pronounced. The time between sentencing in the first proceeding and that in the second is, as to the second term, 'dead time.' The Legislature has not either expressly or by implication indicated an intent to deny dual credit in any of these situations." (*Id.,* at pp. 812-813, fn. omitted.)

Superficially it may appear that defendant pays no separate penalty for the misdemeanor crimes. He gets credit for this jail time as if he had been concurrently sentenced. More accurately, he is penalized by (1) appropriate jail terms, and (2) having his earlier probation revoked and prison sentence imposed. But for the subsequent conduct, his probation would remain intact. His jail terms were for unrelated subsequent criminal acts which became "related" when they were used to cause probation to be revoked. If probation had been revoked without any reference to the subsequent misconduct, for other reasons which supported the revocation, no credit would be given. In this instance credit is to be given only if there is evidence that the *sentencing court relied at least in part on the conduct which resulted in the jail time.* (*In re Atiles, supra,* 33 Cal.3d at p. 811, fn. 6.) Here the probation officer sought probation revocation because of the subsequent conduct and the court took judicial notice of the misdemeanor convictions.

Therefore, we are dealing with the second aspect of *Atiles,* equalizing actual time in custody when multiple concurrent terms are possible. The traditional "but for lack of wealth" inquiry is inappropriate to this side of the credit analysis. In essence, the present defendant was on "standby," having committed the crime which resulted in probation, but which could lead to a prison term. He was then arrested and prosecuted on two misdemeanor offenses. Instead of noticing a prompt probation revocation hearing, he was allowed to serve his jail time.

We need not detail the options available to the prosecutor when a defendant violates probation by subsequent criminal conduct. Under *Atiles* we examine the potential for unequal treatment because of fortuitious charging decisions. Selection of when to start the probation revocation proceeding is the equivalent of a charging decision. As an example of "dead time" if the rule were otherwise, a defendant could be jailed pending a misdemeanor trial, await trial for many days, and then before the trial undergo a belated probation revocation hearing resulting in a prison sentence. The prosecutor could then drop the misdemeanor charge, with no credit for the jail time even though the misdemeanor facts became the only basis for the probation revocation.

Defendant's last contention, that his case must be remanded for resentencing because the court failed to state reasons for revoking his probation and sending him to prison, is without merit. Initially we note defendant has cited no authority for the proposition that a court must explicitly state reasons for revoking probation because revocation is a sentencing choice. However, even assuming reasons must be given, we find them in the record. (*People* v. *Arceo* (1979) 95 Cal.App.3d 117, 121 [157 Cal.Rptr. 10], requiring reasons be given when initially denying probation.)

In the same sentence in which the court revoked probation, it took judicial notice of defendant's two prior misdemeanor convictions, a fact even defendant acknowledges in both his opening and closing briefs. Indeed, in his closing brief, while arguing the previous issue of sentence credits, defendant states that the court used the two prior misdemeanor convictions "in part, as the basis" for finding defendant violated probation. Repeated criminal conduct during probation leniency was the obvious reason for the prison term. Finally, even assuming to defendant's benefit that the reasons are inadequate, the record before us indicates that a more favorable result to defendant upon remand is doubtful. (*People* v. *Swanson* (1981) 123 Cal.App.3d 1024 [176 Cal.Rptr. 915].)

This case is remanded to the trial court, with directions to prepare an amended abstract of judgment awarding defendant appropriate credits, as

proved, and forward a certified copy of same to the appropriate authorities. As so modified, the judgment is affirmed.

Martin, J., and Hamlin, J., concurred.