[No. F005987. Fifth Dist., May 4, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LEO HENRY ADRIAN, Defendant and Appellant.

COUNSEL

Scott T. Carss, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WOOLPERT, Acting P. J.**—Defendant is serving a prison term. His only claim on appeal is that the sentencing court failed to give him credit against his prison term for days spent in jail on a separate misdemeanor offense, and later in prison after revocation of parole on an earlier offense. Because of "fortuitous charging decisions" in the separate cases, he argues, there was a denial of the "equality" ordinarily anticipated when concurrent sentences are ordered.

The pertinent part of defendant's criminal history starts with an assaultive crime in 1980, followed by imprisonment and eventual release on *parole*. In 1982 he committed the subject offense, felony drug possession, and upon conviction received *probation* with conditions, including serving jail time. Later, in unrelated proceedings, his parole was revoked because he had absconded from parole supervision. After a second parole release, probation on the subject offense was revoked for "failure to report" as required. Probation was reinstated, with more jail time as a condition.

In March 1985, defendant was arrested in a different county and convicted of misdemeanor weapon possession, receiving summary probation with

conditions which included serving jail time, less credits for time in custody. After serving this jail time, parole was again revoked and defendant was returned to prison. The basis for the revocation was the recent misdemeanor conviction, not the subject offense.

Meanwhile, although the probation officer assigned to the subject offense had been following the misdemeanor proceedings and activities of the parole officer, no probation revocation proceedings were attempted, nor was a "hold" placed upon defendant. Deference was given to the parole officer's ongoing supervision.

Finally, after defendant had been returned to prison as a second-time parole violator, his probation officer recommended probation be revoked on the 1982 subject offense. Probation was revoked for the single reason defendant violated the "obey all laws" condition of probation by committing the misdemeanor.

Defendant was sentenced to prison on the subject offense, the term to be served concurrently with that being served on the revocation of parole. He was given jail-time credits for: (1) time in custody after his arrest on the subject offense; (2) time in custody as a condition of probation; and (3) time in custody as a condition of reinstating probation. The sentencing court denied credits for: (1) custodial time in connection with the misdemeanor offense; and (2) prison time which resulted when the last parole revocation was completed more speedily than the imposition of the prison sentence on the subject offense.

By a parallel summary, we outline defendant's criminal history:

---

Prior Crime (1980)

Sentenced to prison. Serves
time. Paroled.

 Commits new felony (1982) (subject offense);
 probation; some days served in jail.

Parole revoked for unrelated reasons. Returned
to prison. Placed on parole again.

 Several probation violations, and more days in jail.

 *Commits Misdemeanor* (1985) (No holds.)
 Probation in different county; some jail time.

Parole revoked because of new misdemeanor
conviction. Returned to prison.

 Probation revoked because of misdemeanor
 conviction. Sentenced to prison; concurrent with
 parole revocation term. Appeal; claims credits.

DISCUSSION

Defendant should receive his claimed misdemeanor-time credits if our decision in *People* v. *Veley* (1984) 157 Cal.App.3d 1046 [204 Cal.Rptr. 83] is good law. However, upon further study we conclude the *Veley* reasoning was superficial and erroneous in that we misinterpreted the position of our high court in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789], and *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910].

In *Veley,* we paid too much attention to suggested judicial policies and concerns, while overlooking the Supreme Court's more limited holdings. The broad approach to the *Atiles* opinion taken by us in *Veley* has as its roots three paragraphs in which the high court discussed the policy and legislative purpose surrounding Penal Code section 2900.5:[1] "Our construction of section 2900.5 is compatible with the dual legislative purpose of 'eliminat[ing] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts' (*In re Rojas, supra,* 23 Cal.3d at p. 156) and equalizing the actual time served in custody for given offenses. (*People* v. *Riolo* (1983) 33 Cal.3d 223, 228 [188 Cal.Rptr. 371, 655 P.2d 723].)

"Unequal treatment follows not only from denial of credit altogether for presentence jail time, however, but also from denial of credit on multiple concurrent terms. This may occur if a defendant seeks separate trials on severable charges to ensure his right to a fair trial, if a prosecutor does not join multiple counts in a single accusatory pleading, or if a defendant faces charges in more than one jurisdiction. It may also occur in cases such as this in which parole revocation proceedings and new charges are pending simultaneously if the defendant does not promptly plead guilty and seek immediate sentencing. In each of these situations, the possibility of unequal treatment exists if concurrent terms are imposed, but because sentence has been imposed or parole revoked in the first proceeding before the others are tried, credit for time in jail while awaiting disposition of the remaining charges is denied. The terms then are not truly concurrent since the effect of denying credit on the later terms is that they commence only on the date sentence is pronounced. The time between sentencing in the first proceeding and that in the second is, as to the second term, 'dead time.' The Legislature has not either expressly or by implication indicated an intent to deny dual credit in any of these situations.

"Were we to construe section 2900.5 as prohibiting dual credit when concurrent terms are imposed in the above circumstances, the legislative

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

purpose of avoiding unequal treatment of prisoners would be frustated, not furthered. The length of imprisonment would depend upon the fortuitous charging decision of a prosecutor or on a defendant's election to seek separate trials." (*Atiles, supra,* 33 Cal.3d at pp. 812-813, fn. omitted.)

These observations of the majority in *Atiles* were made after a statutory analysis and conclusion the defendant was entitled to full jail-time credits. The credits were awarded despite the fact that, while being held on the subject crime, the defendant was also in custody on a parole hold. As a result, he simultaneously received separate credit against his parole revocation term. In the present case, defendant relies upon this discussion of "unequal treatment" of indigents and "equalizing" of actual time served, as well as our holding in *Veley,* for his argument he is the victim of "fortuitous charging decisions" and "inequality."

We also decline defendant's invitation to compound our error by extending *Veley* to permit credits when parole revocation proceedings are accomplished more quickly than probation revocation proceedings, even though each is based upon the same unrelated offense. While this conclusion may appear to be contrary to the sentiments of the majority in *Atiles,* we believe it is a conclusion consistent with Supreme Court precedent and legislative intent.

Among the code sections dealing with statutory preimprisonment credit law are two which we footnote in full, sections 2900.5 and 4019.[2] In both

---

[2]Section 2900.5 provides: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including but not limited to any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his term of imprisonment, or credited to any fine which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. In any case where the court has imposed both a prison or jail term of imprisonment and a fine, any days to be credited to the defendant shall first be applied to the term of imprisonment imposed, and thereafter such remaining days, if any, shall be applied to the fine.

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.

"(c) For the purposes of this section, 'terms of imprisonment' includes any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and parole, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency.

*Rojas* and *Atiles,* the court urged these sections be interpreted according to their "usual, ordinary, and common sense meaning . . . ." (*Rojas, supra,* 23 Cal.3d at p. 155.)

Although this statutory language may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts. In well over 30 cases, courts have relied upon a variety of reasons in reaching conflicting results. Probably the only sure consensus among the appellate courts is a recognition that section 2900.5,

"(d) It shall be the duty of the court imposing the sentence to determine the date or dates of any admission to and release from custody prior to sentencing, and the total number of days to be credited pursuant to the provisions of this section. The total number of days to be credited shall be contained in the abstract of judgment provided for in Section 1213.

"(e) It shall be the duty of any agency to which a person is committed to apply the credit provided for in this section for the period between the date of sentencing and the date the person is delivered to such agency."

Section 4019 provides: "(a) The provisions of this section shall apply in all of the following cases:

"(1) When a prisoner is confined in or committed to a county jail, industrial farm, or road camp, or any city jail, industrial farm, or road camp, including all days of custody from the date of arrest to the date on which the serving of the sentence commences, under a judgment of imprisonment, or a fine and imprisonment until the fine is paid in a criminal action or proceeding.

"(2) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding.

"(3) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp for a definite period of time for contempt pursuant to a proceeding, other than a criminal action or proceeding.

"(4) When a prisoner is confined in a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp following arrest and prior to the imposition of sentence for a felony conviction.

"(b) Subject to the provisions of subdivision (d), for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

"(c) For each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp.

"(d) Nothing in this section shall be construed to require the sheriff, chief of police, or superintendnet of an industrial farm or road camp to assign labor to a prisoner if it appears from the record that the prisoner has refused to satisfactorily perform labor as assigned or that the prisoner has not satisfactorily complied with the reasonable rules and regulations of the sheriff, chief of police, or superintendent of any industrial farm or road camp.

"(e) No deduction may be made under this section unless the person is committed for a period of six days or longer.

"(f) It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody."

subdivision (b), is "difficult to interpret and apply." (*People* v. *Mercurio* (1985) 169 Cal.App.3d 1108, 1110 [216 Cal.Rptr. 1].) As we have noted, in what is surely an understatement, "[c]redit determination is not a simple matter." (*People* v. *Chew* (1985) 172 Cal.App.3d 45, 49 [217 Cal.Rptr. 805].)

Irrespective of whether the statutory language is unclear, or was merely made so by judicial analysis which disregarded the limiting words of the sections, uncertainty has followed the opinions in *Rojas* and *Atiles*. Our court, in its pre-*Rojas* case of *In re Pollock* (1978) 80 Cal.App.3d 779 [145 Cal.Rptr. 833], and post-*Atiles* cases of *People* v. *Schaaf* (1983) 150 Cal.App.3d 45 [197 Cal.Rptr. 458], and *Veley,* has stirred the already muddy waters. (Cf. *People* v. *Esparza* (1986) 185 Cal.App.3d 458 [229 Cal.Rptr. 739]; *People* v. *Ross* (1985) 165 Cal.App.3d 368 [211 Cal.Rptr. 595].)

In reviewing our position and that of other districts, we note two primary sources of confusion. First, there are many factual variations of crime and punishment, probation and parole, reverse time sequences, and unclear reasons for action or inaction. Often the statutory language does not adapt easily to the particular sequence of events. Second, because the complexity usually arises in cases involving recidivists whose multiple crimes are prosecuted at different times, and perhaps in several jurisdictions, it is sometimes difficult to describe and keep in mind the pertinent facts.

For sake of clarity, we adopt the style of several courts in referring to the criminal conduct which is the subject of the appeal and claim for credits as the "subject offense." Other criminal conduct which has been handled in a different proceeding is termed an "unrelated offense." Further, we find it important to use care in identifying the particular kind of custody involved. Our conclusion depends in part on the character of custodial restraint. Although by no means an exclusive list, for purposes of our discussion the pertinent kinds of custody are: (1) detention in jail or an equivalent facility prior to sentence, including time served as a condition of probation ("presentence time"); (2) time in jail, prison, or equivalent facility while serving a sentence ("term serving time"); and (3) postimprisonment time on a parole hold or revocation ("parole revocation time").

A number of principles are clear. Section 2900.5 deals with involuntary restraint of a person charged with crime but not yet convicted. (*In re Watson* (1977) 19 Cal.3d 646, 651 [139 Cal.Rptr. 609, 566 P.2d 243].) As *Watson* makes clear, if the restraint is caused by the subject offense, full credits are given for *pretrial* custody.

 If the defendant is arrested and charged with multiple offenses, the presentence time is credited against the term imposed on each crime where

concurrent sentences are imposed. (*People* v. *Schuler* (1977) 76 Cal.App.3d 324, 330 [142 Cal.Rptr. 798].) Thus, if the multiple crimes are prosecuted in a single proceeding and concurrent sentences are ordered, it makes no difference that the crimes were committed at different times. The credits become effective "together" on each crime at the time of sentencing.

■ Quite a different result occurs when there are two or more *proceedings* leading to sentencing at different times. The last court to order the sentence executed must declare whether the multiple convictions run concurrently or consecutively. (*People* v. *McCart* (1982) 32 Cal.3d 338 [185 Cal.Rptr. 284, 649 P.2d 926]; *People* v. *Gray* (1986) 176 Cal.App. 3d 520 [222 Cal.Rptr. 29].) If ordered to run concurrently, the resulting combination of terms to be served does not alter the credit allocation or starting points. An order that sentences run concurrently does not mean they all start over so each has a common beginning: "[S]entences may be concurrent, i.e., may run together, without either starting together or ending together. What is meant is that they run together during the time that the periods overlap." (*In re Roberts* (1953) 40 Cal.2d 745, 749 [255 P.2d 782].)

Because credits are not reallocated when the sentences imposed in separate proceedings are ordered to run concurrently, there may be "dead time" of the kind concerning the majority in *Atiles*. (*Atiles, supra,* 33 Cal.3d at pp. 812-813.) "Dead time" is a popular reference to the loss of earned credits resulting from a staggered pattern of concurrently running multiple terms imposed in different proceedings. For example, it occurs when the credits apply only to a short term imposed in the first case, and a second sentencing court then orders all the terms to be served concurrently, but the last imposed term, with its own credits, is the longer one and will expire last. The credits on the first, shorter term, thus become meaningless. In contrast, however, if the last imposed concurrent term is the shorter of the two, its credits are of no practical consequence.

"Dead time" may also occur when concurrent sentences are made impossible because the term imposed in the first proceeding in which sentencing occurs is fully served before sentence is imposed in the second.[3] "Dead time" is of significance when the opportunity to maximize the potential for concurrent sentences is the objective. It is of little or no importance when the main concern is full punishment for multiple offenses prosecuted in separate proceedings.

Only one set of credits is given on consecutive sentences imposed in a

---

[3]There are statutory safeguards against prosecutorial delays in bringing other pending matters to completion. A defendant doing "term serving time" may demand that he be brought to trial or be sentenced within periods of 90 and 180 days. (§§ 1381, 1381.5, 1389-1389.8.)

single proceeding. (§ 2900.5, subd. (b).) Precedents are sometimes distinguished because of the application of this subdivision.

In the case of multiple proceedings leading to terms which are consolidated by the last sentencing court pursuant to section 669, the "attributable" limitation still applies. As previously mentioned, credits are not reallocated: they remain assigned only to the proceedings in which they were earned. Therefore, if the last court orders consecutive sentences and the credits earned on the terms ordered to run consecutive exceed the resulting one-third of middle base terms imposed, the consecutive terms are "served," but the excess credits are not available to reduce the unrelated full base term. (*People* v. *Riolo* (1983) 33 Cal.3d 223 [188 Cal.Rptr. 371, 655 P.2d 723]; *People* v. *Brown* (1984) 156 Cal.App.3d 1131 [203 Cal.Rptr. 141].) In *Brown,* this court denied the excess credit "dead time" even though there was a claimed relationship of the offenses due to the revocation proceedings.

Defendant asserts two "dead time" arguments based upon "fortuitous" decisions of the authorities, claiming relief should be given under the *Atiles* equality discussion. We will return to these contentions later.

Keeping in mind the limiting principles set forth above, we recall the proceedings on defendant's subject offense were extended because of the grant of probation. During the preimprisonment time between his arrest and prison sentence he suffered several revocations of parole and probation. He was also arrested and "imprisoned" in the county jail as a result of an unrelated misdemeanor conviction. After that time was served, he was sentenced to prison, his new term to be served concurrently with the "parole revocation term." We must look for the possible "relationship" of the custodial time due to the parole and probation revocations, and "dead time" which may have resulted from credit losses.

In *Atiles* the defendant was jailed because he committed the subject offense while on parole. He had not yet posted bail when a parole-revocation "hold" was placed on him. The parole-revocation proceedings were accomplished rapidly. He served the entire parole-revocation period in jail awaiting sentence on the subject offense. Ultimately he made bail, but not until after the parole-violation term ended. On appeal, he was credited the entire presentence time in custody because the conduct which caused the parole-revocation proceedings, and the jail time as a parole violator, was the same criminal conduct for which he was convicted. It made no difference that dual credits could be claimed because of the "common hold" period.

In this case there were no relevant dual restraints of the kind in *Atiles.* However, because the dual restraint in *Atiles* included "parole revocation

time" (parole revoked and constructive return to prison) for which credits were given, we must look again to the *Rojas* case. Did our high court mean to allow dual credits after the cause of the jail-time changes from two restraints of the "presentence time" variety, to custody of two kinds: one being "presentence time" caused by the subject offense, and the other being "term serving time"?

■ It is our view *Rojas* excludes section 2900.5 credits whenever the jail time is of the "term serving" variety, irrespective of the sequence of the restraints. We also conclude the court in *Atiles* left this rule intact.

In *Rojas* the facts were not complicated. The defendant had been convicted of manslaughter and imprisoned. He was then returned to jail to await the prosecution of the unrelated subject offense of murder. He wanted his time awaiting the murder trial to be credited to the murder term. The Supreme Court phrased the issue as follows: "The issue is whether Penal Code section 2900.5 entitles a criminal defendant to credit towards his sentence for a period of presentence time spent in custody, if during that same period the defendant was simultaneously serving a prison term for a prior unrelated offense." (*Rojas, supra,* 23 Cal.3d at p. 154.)

Later, the court indicated the "sole question" was whether defendant should be credited for time when he "would necessarily have served that 207-day period in state prison for the original manslaughter conviction and when he was already receiving credit for that period against his original conviction." (*Id.* at p. 155.) The answer: "The sensible inference is that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Id.* at pp. 155-156.)

Unfortunately, when the rule was applied to the facts, this sentence, which would later be quoted extensively by the Courts of Appeal, followed: "There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime." (*Id.* at p. 156, original italics.)

Later, in *Atiles,* the court rephrased the same observation: "The court need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is a basis for those restraints." (*Atiles, supra,* 33 Cal.3d at p. 810.)

The *Atiles* characterization of the issue caused our court to apply a *sequential* test in several cases. We noted the high court's use of the words

"already serving" and "when." (*People* v. *Schaaf, supra,* 150 Cal.App.3d at pp. 51-52; *People* v. *Cornett* (1985) 165 Cal.App.3d 752, 757 [212 Cal.Rptr. 24].) Other courts rejected this emphasis (*People* v. *Esparza, supra,* 185 Cal.App.3d 458; *People* v. *Davis* (1986) 187 Cal.App.3d 1250 [232 Cal.Rptr. 428]), and still others used a modified approach (*In re McCarthy* (1986) 184 Cal.App.3d 827 [229 Cal.Rptr. 286]).

On reflection, we find ourselves in general agreement with *Esparza,* which concluded *Rojas* did not establish a rule dependent upon the sequence of the restraints. The *Esparza* court observed there would be no logic to a rule which denies credits only if the unrelated sentence begins one day before, rather than one day after the restraint imposed as a result of the subject offense. (*Esparza, supra,* 185 Cal.App.3d at p. 468.) Section 2900.5 makes no such distinction. Returning to the language quoted from *Rojas,* it is more consistent with the high court's general conclusions if emphasis is placed on the court's use of the words "during that same period" and "simultaneously serving," when it framed the issue before it. (*Rojas, supra,* 23 Cal.3d at p. 154.)

The following comment of the *Rojas* court is not a statement based upon a sequential approach: "Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*Id.* at p. 156.) The reference is not to a simple test in which the key is to identify the first loss of liberty. Instead, the court's reference is to the impact of the restraint. This depends upon the *kind* of custody at the time in question.

For section 2900.5 dual-restraint purposes, neither the calendar sequence in which the crimes are committed nor the order in which arrests and restraints are placed has any relevance. The concept of dual restraints is not concerned with first-in-time considerations. The *timing* of the change from one form of custody to another is also not a factor.

The denial of presentence custody credits takes place whenever "term serving time" supersedes other restraints, irrespective of whether the "term serving" custody starts before or after the first restraint on the subject offense. For the same interpretation of *Rojas,* see *People* v. *Martinez* (1982) 132 Cal.App.3d 119, 134-136 [183 Cal.Rptr. 256]. Other courts have found implicit Supreme Court approval of this view in the *Rojas* court's treatment of *In re Pollock, supra,* 80 Cal.App.3d 779.

In *Pollock* the defendant had been arrested on the subject offense and, while proceedings were underway, was arrested and sentenced to prison on an unrelated offense. The beginning of his prison term was served in jail while the subject offense proceedings were completed. Our court concluded

credits should be granted for the entire period, including the time in which the defendant was in "term serving" status. (*In re Pollock, supra,* at p. 783.)

In *Rojas* the court said *Pollock* adopted questionable reasoning, "thereby reaching [a] result[] which do[es] not appear to have been intended by the drafters of section 2900.5. . . . [T]his holding is incorrect and [is] . . . expressly disapproved." (*Rojas, supra,* 23 Cal.3d at p. 157.) Later, in *Atiles,* the court confirmed this analysis of *Pollock,* saying: "[W]e disapproved that reasoning, as well as the holding in *In re Pollock* . . . ." (*Atiles, supra,* 33 Cal.3d at p. 809.)

Our present interpretation of *Rojas,* which precludes jail-time credits when one of the restraints is simultaneous "term serving time," is consistent with the observation in *In re Watson, supra,* 19 Cal.3d at page 651, that the meaning of the word "custody" varies as it is used in different statutes. Section 2900.5 deals with persons not yet convicted. It "pertains to the *pretrial* incarceration of a person charged with crime but not yet tried much less convicted, and therefore clothed with the presumption of innocence." (*In re Watson, supra,* 19 Cal.3d at p. 651, original italics.)

The Legislature has similarly indicated jail-time credits are for days in custody prior to the imposition of sentence, and not while serving time. Statutes provide credits for actual days in custody (§ 2900.5) and for work and conduct (§ 4019). Section 2900.5, subdivision (a), refers to section 4019 for the good-behavior and work-performance credits to be added to the actual days in custody. Section 4019 distinguishes between four kinds of custody, the first three applying to misdemeanor proceedings. (*People* v. *Sage* (1980) 26 Cal.3d 498, 504 [165 Cal.Rptr. 280, 611 P.2d 874].) The fourth, added after *Sage,* credits confinement prior to imposition of a felony sentence. (§ 4019, subds. (a)(1)-(4).) Subdivision (a)(1), concerning misdemeanor sentences, refers to credits for time served "from the date of arrest to the date on which the serving of the sentence commences." Subdivision (a)(4), involving felony sentencing, refers to the time span as "following arrest and prior to the imposition of sentence for a felony conviction." These section 4019 credits are commonly referred to as "*Sage* credits."

*Sage* credits are expressly limited to presentence custodial time. Postsentence credits are provided by other statutory provisions, such as sections 2930-2935, dealing with the credits to be earned in prison. Because the two sections specifically address a particular kind of custody preventing the release of the defendant, it is doubtful the Legislature intended *Sage* credits would continue under a dual restraint circumstance if one of the restraints is "term serving time." Likewise, if *Sage* credits stop during "term serving time," then section 2900.5 credits should also be stopped. The credits are earned in concert: both sections apply, if at all.

We conclude sections 2900.5 and 4019 do not provide for dual credits during "term serving time" periods. The service of a penal term is of a superseding character, leaving for its duration no "custody" attributable to the subject offense proceedings.

Our conclusion that "term serving time" precludes the simultaneous earning of section 2900.5 credits may appear in conflict with the *Atiles* rule which permits credits to continue after the parole violation "hold" turns into a parole revocation. When this happens, the defendant continues in local custody, pending the resolution of the subject-offense proceedings, and simultaneously serves prison time on the parole revocation. He is therefore in "constructive prison custody."

But for the *Atiles* holding, we would decline to extend section 2900.5 credits to an adjudicated parole violator who serves the administratively imposed penalty for the violation. (See *People* v. *Luna* (1982) 130 Cal.App.3d 550 [181 Cal.Rptr. 833]; cf. *In re Wright* (1983) 141 Cal.App.3d 68, 70 [189 Cal.Rptr. 843], a pre-*Atiles* case in which our court suggested: "It is arguable that upon revocation of parole the defendant is thereafter serving time solely upon the parole offense regardless of the reason for parole revocation.")

Nevertheless, we may distinguish the *Atiles* holding because the court was not dealing with ordinary "term serving time." Parole revocation is an administrative proceeding with special consequences and limitations. (§ 3057; *People* v. *Ross, supra,* 165 Cal.App.3d at p. 372.) In *People* v. *Espinoza* (1979) 99 Cal.App.3d 59 [159 Cal.Rptr. 894], Justice Kaufman, confronted with a related problem involving the application of section 667.5, made a detailed analysis of the relationship of parole to prison time. In part, he concluded the Legislature assumed a term of imprisonment expires prior to release on parole. (*Espinoza, supra,* 99 Cal.App.3d at p. 72.) Thus, "term serving time," in its usual sense, has been completed.

Parole may be revoked for numerous reasons other than criminal conduct, and a combination of reasons may be present. The revocation period is of limited duration. If the parole violator is returned to prison because of a new felony conviction, the sentencing court may not order the new term to be consecutive to the short period of time being served on the parole revocation. (*People* v. *Mathews* (1980) 102 Cal.App.3d 704, 713 [162 Cal.Rptr. 615].) Therefore, when a defendant is sent to prison on a new felony commitment, for practical credit purposes, service of the full parole-revocation term becomes of minor significance.

If a parolee commits a new crime for which he is returned to prison on a new term, the circumstances considered by the sentencing court include

the facts of the prior prison term and violation of parole. (*Atiles, supra,* 33 Cal.3d at p. 813.) An entirely new parole period will be imposed at the end of the new term.

Notably, the Board of Prison Terms has adopted administrative regulations recognizing the superseding effect of the new term. In pertinent part they provide: "If a parolee who was on parole from a term other than a statutory term of life, is returned to prison as a revoked parolee with a new commitment, department staff shall calculate the revocation release date and the release date for the new commitment. If the release date for the new commitment is later than the revocation release date, department staff shall discharge the former term. If the revocation release date is later than the release date for the new commitment, department staff shall refer the case to the board on the miscellaneous proceedings calendar. The board shall determine whether to discharge the former term." (Cal. Admin. Code, tit. 15, § 2649.)

We therefore distinguish the *Atiles* parole revocation credits as unique and not concerned with "term serving time" as we use that credit-precluding status.

When there is a grant of probation with an "obey all laws" condition, a different time sequence may occur. In the *Rojas* crime series, the subject offense is being prosecuted and is either preceded or interrupted by an unrelated penal term being served. In contrast, when the subject proceedings reach the point of release on probation, any new crime may cause a resumption of the subject proceedings. In this case, while on probation defendant committed a misdemeanor in a nearby county and came under the direct jurisdiction of a different court and probation officer. The probation officer assigned to the subject proceedings did not cause a probation violation "hold" to be placed on defendant while he was being prosecuted and confined because of the misdemeanor.

Under the words of section 2900.5, subdivision (b), defendant's misdemeanor-related custody had to be "attributable to proceedings related to the same conduct for which the defendant has been convicted" to permit credits against the subject-offense term. Thus, the question: When the subject-offense proceedings reach the probation revocation stage, and a new, obviously unrelated offense is used as a basis for probation revocation, has that use of unrelated conduct caused a sufficient relationship to satisfy section 2900.5?

In *Veley* the defendant was also on probation from the subject offense when he committed two misdemeanors for which he served time without

any probation revocation "hold" being placed upon him. When the trial court in the subject-offense proceeding took notice of the unrelated offenses, probation was revoked and a prison sentence imposed. We held that because the unrelated offenses were among the reasons for revoking probation, the separate conduct became related. Credit was therefore given.

Since *Rojas* precludes section 2900.5 credits against the subject-offense term for "term serving time" on unrelated crimes, we realize the defendant in *Veley* should not have been credited for his misdemeanor "term serving time," even though the misdemeanor convictions may have caused him to be imprisoned on the subject offense. Furthermore, the subject-offense proceedings had nothing to do with his having to serve the jail time for the unrelated misdemeanor offenses. His failure to comply with the "obey all laws" condition of probation was reason enough to revoke probation; however, the length of his subject-offense prison term was solely dependent on other considerations. (*People* v. *Ross, supra,* 165 Cal.App.3d at p. 372.)

The defendant in *Veley* was granted credits which were not only dual, but were also in excess of that contemplated by the Legislature. For the misdemeanor offense he received the usual preimprisonment and postimprisonment credits which did not include section 4019 credits after the misdemeanor sentence was imposed. Eventually, because he was a multiple offender on felony probation from the subject-offense proceedings, he received section 4019 credits against his new prison term when probation was revoked, even though it involved the same period of time and part of the misdemeanor time period was "time serving" custody.

Our error in *Veley* will not be repeated here. Defendant is not entitled to section 2900.5 credits, as an offset against his term on the subject offense, for any of the time in custody on the unrelated misdemeanor. Even if a probation revocation "hold" had been placed, it would not have allowed the misdemeanor "term serving time" to be related for credit purposes. It is unnecessary for us to decide if a "hold" during the misdemeanor presentence period would have caused the relationship needed for credit. (Compare *People* v. *Blunt* (1986) 186 Cal.App.3d 1594 [231 Cal.Rptr. 588], and *People* v. *Brown* (1980) 107 Cal.App.3d 858 [166 Cal.Rptr. 144].)

Defendant also encourages us to apply, as in *Veley,* the suggestion in *Atiles* that section 2900.5 credits should be used to nullify the "dead time" consequences of certain "fortuitous" choices made by prosecutors, parole officers and probation officers. (*Atiles, supra,* 33 Cal.3d at pp. 812-813.) For example, in this case the probation officer did not seek a revocation of probation until after the misdemeanor time had been served.

In *Veley* we observed the failure of the probation officer to accomplish a speedy probation revocation prevented the misdemeanor time from being

served concurrently with the prison term on the subject offense. Our credit decision remedied that delay. (*Veley, supra,* 157 Cal.App.3d at pp. 1049-1051.)

We now believe such an expansive approach to section 2900.5 causes more problems than solutions. Far too much guesswork is involved in determining why proceedings have been handled in a particular way. We further note, as did Justice Mosk in his dissenting opinion in *Atiles,* that the difficulty in applying section 2900.5 arises only when the defendant has engaged in repetitive criminal conduct. (*Atiles, supra,* 33 Cal.3d at p. 814 [dis. opn. of Mosk, J.].)

If there are "fortuitous" credit results caused by multiple proceedings, at least a part of the fault lies with the defendant whose criminal conduct takes place over a period of time and in different places. Detection, arrest, and readiness for trial have as much to do with the defendant as with law enforcement. The defendant who violates probation and seeks judicial reconstruction of past events in order to equalize credits is in a poor position to complain.

Within the clear mandate of section 2900.5, credits minimize inequality. However, much of the "dead time" argument involves speculation. (*People v. Davis* (1986) 187 Cal.App.3d 1250, 1256 [232 Cal.Rptr. 428].) Plea bargaining and sentencing choices cause all sorts of time variations. (*People v. Murillo* (1986) 178 Cal.App.3d 232 [224 Cal.Rptr. 1]; *People v. Brown, supra,* 156 Cal.App.3d 1131 [203 Cal.Rptr. 141].) Section 2900.5 is not a cure-all. The enactment of the determinate sentencing law subsequent to section 2900.5, and the cases construing it, may have complicated the application of the section. If there are resulting inequities, solutions should be obtained through the legislative process. (*Atiles, supra,* 33 Cal.3d at p. 813.) However, fewer complexities are present if "term serving time" is credited only to the term being served, and section 2900.5 is not construed in a variety of ways in an attempt to cause more concurrency in term serving.

Defendant seeks further credits for the time period after he violated parole and was returned to prison but probation had not been revoked. He claims the delay in seeking the probation revocation caused him to serve extra days in prison custody. He argues, in effect, that he should not have had to serve any time on the parole revocation. The contention has the benefit of hindsight: he assumes the misdemeanor conviction was certain to cause the revocation of both parole and probation.

This "prison time" claim for section 2900.5 credits is a variation on the facts in *Atiles.* In *Atiles,* the defendant remained in jail custody pending sentence on the subject offense; while in custody his parole was revoked, enti-

tling him to be in constructive prison custody and simultaneously gaining credits against the parole-revocation term. In the meanwhile, he was continuously receiving section 2900.5 credits on the subject offense.

In our case, the parole officer acted speedily by placing defendant in the first "custody," and ultimately back in prison. Only then did the probation officer cause the probation revocation which led to sentencing on the subject offense.

There is one important difference between the facts in this case and *Atiles*. Here, the cause of the parole revocation was *not* the subject offense. Therefore, the section 2900.5 "relationship" cannot be satisfied. The two revocations were based upon a single, unrelated misdemeanor conviction; only the subject offense was the cause of the new sentence to prison.

Defendant asks for *Atiles* "equalizing." He simply contends the probation officer should have acted as quickly as the parole officer. An award of credits would rectify the inequality resulting from the delay. We know of no such rule. Even if we could formulate a "reasonable diligence" time table for section 2900.5 purposes, it would not overcome the clear limitations within the section which are to the contrary.

Because defendant was returned to prison as an adjudicated parole violator, and no probation revocation detention had been placed on him prior to his receipt in prison, we also affirm the sentencing court's denial of section 2900.5 credits for the brief time period spent in prison awaiting the commencement of his new prison term. For only a few days defendant served part of the prison time imposed on him as a parole violator. If there was any inequality because of "dead time," it was shared with other parole violators whose return was caused by *noncriminal* conduct and who had to spend the entire revocation time without banking it on another penal term. (*People v. Esparza, supra,* 185 Cal.App.3d at p. 468.)

The judgment is affirmed.

Hamlin, J., and Harris, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 26, 1987.

---

*Assigned by the Chairperson of the Judicial Council.